

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

JUN 1 2 2000

NANCY DOHERTY, CLERK
By _____
Deputy

PLAINTIFFS:                                        §
                                                   §
CHILDREN OF ISKCON:                                §
LAWRENCE ANDERSON,                                 §
JOHN BAEZ,                                         §    CIVIL ACTION NO.: _____
BENJAMIN BRESSACK,                                 §
ANNA CARLSON,                                      §    **3-00CV1254-T**
KRSNA SHAKTI CARLSON,                              §
HEIDI CHACON,                                      §
MAYA CHARNELL,                                     §
JACOB CHATTERTON,                                  §
JAMES PETER CHATTERTON,                            §
CHRISTOPHER CHIRCOP,                               §
ZOLTAN CORBETT,                                    §
KEITH DOMINGO,                                     §
ABHAY DURR,                                        §
MELODY GEDEON,                                     §
TINA HEBEL,                                        §
NIRMALA HICKEY,                                    §
JENS JENSEN,                                       §
VISHAKA JOKIEL                                     §
NADIM KESTEN,                                      §
LAKSAMANA KEYES,                                   §
TRISHA KLIMEK,                                     §
BRAJADEVI LEVINE,                                  §
GREG LUCZYK,                                       §
FRANK LYONS,                                       §
NARAYANA LYONS,                                    §
JOI McMILLON,                                      §
TAJH MILLER,                                       §
JOEY MUSACCHIO,                                    §
YURI NESBITT,                                      §
ANYA POURCHOT,                                     §
BRIDGETTE RITTENOUR,                               §
STEPHANIE RUMPLE,                                  §
UDDHAVA SAMANICH,                                  §
SUTA DAS SCHRAMM,                                  §
BRAJARANI SCIOSIA,                                 §
VILASINI SILVERMAN,                                §
ANANTA SOFSKY,                                     §
JUSTIN SOFSKY,                                     §

CHRISTOPHER STRAYHORN, §
CORRINA TILLMON, §
JESSICA TILLMON, §
SITA TORTORICE, §
DAVID TOURJEE, §
DAMIAN WEIR, §
§
      Plaintiffs, §
§
V. §
§
<u>DEFENDANTS</u>: §
§
ISKCON, a d/b/a of §
THE INTERNATIONAL SOCIETY FOR §
KRISHNA CONSCIOUSNESS, §
INTERNATIONAL SOCIETY FOR §
KRISHNA CONSCIOUSNESS, §
ISKCON FOUNDATION, INC., §
ISKCON OF WEST VIRGINIA, §
INTERNATIONAL SOCIETY FOR §
KRISHNA CONSCIOUSNESS OF §
WASHINGTON, §
DAMODAR TITLE HOLDING §
CORPORATION OF DALLAS, INC., §
ISKCON, INC., §
ISKCON KRISHNAFEST USA, INC., §
ISKCON OF LAKE HUNTINGTON §
PROPERTY CORPORATION, §
ISKCON OF PORT ROYAL, INC., §
ISKCON TELEVISION, INC., §
ISKCON OF LOS ANGELES, §
ISKCON OF CALIFORNIA, INC., §
ISKCON OF SOUTHERN CALIFORNIA, §
ISKCON OF SAN DIEGO; §
GREGORY GOTTFRIED, §
ROBERT GRANT, §
THOMAS HERTZOG, §
GOPAL KHANNA, §
HOWARD RESNICK, and §
GLEN TETON, as Executors of The Estate §
of A.C. BHAKTIVEDANTA SWAMI §
PRABHUPADA; §
FARAMARZ ATTAR, §
CHARLES BACIS, §

| | |
|---|---|
| WILLIAM BERKE, | § |
| ROBERT CORENS, | § |
| WILLIAM EHRLICHMAN, | § |
| JOHN FAVORS, | § |
| STEVEN   GOREYNO   a/k/a   STEVEN | § |
| GUARINO, | § |
| MICHAEL GRANT, | § |
| KEITH HAM, | § |
| THEODORE RICHARD HARRIS, | § |
| THOMAS HERTZOG, Individually, | § |
| JEFFREY HICKEY, | § |
| HANS KARY, | § |
| GOPAL KHANNA, Individually, | § |
| WILLIAM OGLE, | § |
| HOWARD RESNICK, Individually, | § |
| BRUCE SCHARF, and | § |
| DEFENDANT DOES 1-30, | § |
| | § |
| Defendants. | § |

## PLAINTIFFS' ORIGINAL COMPLAINT

LAW OFFICES OF WINDLE TURLEY, P.C.

Windle Turley
State Bar No. 20304000

Patrick C. Patterson
State Bar No. 15603560

6440 North Central Expressway
1000 University Tower
Dallas, Texas  75206
Telephone No. 214/691-4025
Telecopier No. 214/361-5802
Email: win@wturley.com

## INDEX

| | | |
|---|---|---|
| I | PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| | PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 1 |
| | DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| | DEFENDANT MEMBERS OF THE GOVERNING BODY OF COMMISSIONERS (GBC) RESIDING IN THE U.S.A. . . . . . . . . . . . . . . . . . . . . . | 6 |
| II | JURISDICTION AND VENUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| III | ORGANIZATION OF DEFENDANTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 9 |
| | A. | ISKCON'S GOVERNING BOARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 |
| | B. | MOVEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 |
| | C. | GURUKULA BOARDING SCHOOLS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10 |
| | D. | INDIA BOARDING SCHOOL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 |
| IV | WRONGFUL AND ILLEGAL ACTS OF ABUSE OF MINORS . . . . . . . . . . . . . . . 12 |
| | A. | YEARS OF PRIMARY ABUSE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12 |
| | B. | ABUSE INFLICTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13 |
| V. | WRONGFUL AND ACTIONABLE CONDUCT OF THE DEFENDANTS . . . . . . . . 18 |
| | A. | NEGLIGENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18 |
| | B. | ISKCON'S BREACH OF FIDUCIARY DUTY . . . . . . . . . . . . . . . . . . . . . . . . 20 |
| | | (i) CONSTRUCTIVE FRAUD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21 |
| | | (ii) BREACH OF CONTRACT/BREACH OF WARRANTY . . . . . . . . . . . 21 |
| | C. | DEFENDANTS BREACHED THEIR STATUTORY DUTY . . . . . . . . . . . . . . 22 |
| | D. | GROSS NEGLIGENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22 |

E.  DEFENDANTS' NEGLIGENT ASSUMPTION OF
RISK OF INTENTIONAL OR CRIMINAL CONDUCT . . . . . . . . . . . . . . . . . 22

F.  DEFENDANTS' NEGLIGENT MISREPRESENTATION
INVOLVING RISK OF PHYSICAL HARM . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

VI  CONSPIRACY AND FRAUDULENT CONCEALMENT . . . . . . . . . . . . . . . . . . . . . 24

A.  DEFENDANTS' CONCERT OF ACTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

B.  DEFENDANTS' INTENTIONAL AND NEGLIGENT
INFLICTION OF EMOTIONAL DISTRESS . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VII  RICO VIOLATIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

A.  VIOLATION OF THE FEDERAL RACKETEER-INFLUENCED
AND CORRUPT ORGANIZATIONS ACT (RICO)
18 U.S.C. §§ 1962(C) AND 1962(D)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

B.  VIOLATION OF THE FEDERAL RACKETEER-INFLUENCED AND
CORRUPT ORGANIZATIONS ACT – 18 U.S.C. §§ 1962(A) AND (D) . . . . . 31

VIII  DAMAGES OF PLAINTIFFS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

IX  REQUEST FOR INJUNCTION AGAINST FURTHER
SEXUAL OR PHYSICAL ABUSE OF MINOR CHILDREN  . . . . . . . . . . . . . . . . . 34

X  REQUEST FOR ORDER PROHIBITING DESTRUCTION
OR SPOLIATION OF EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XI  STATEMENTS TO THE COURT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XII  JURY DEMAND  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XIII  CLAIM FOR PREJUDGMENT AND POST-JUDGMENT INTEREST  . . . . . . . . . . 36

## PLAINTIFFS' ORIGINAL COMPLAINT

COME NOW Plaintiffs Children of ISKCON, et al. ("Plaintiffs") and file this Original Complaint complaining of the International Society for Krishna Consciousness ("ISKCON"), et al., and state the following:

I.

## PARTIES

**PLAINTIFFS:**

All the Plaintiffs named herein were minors at the time of the sexual, emotional, mental and physical abuse and exploitation alleged herein.

1. Plaintiff Lawrence Anderson resides in North Carolina.

2. Plaintiff John Baez resides in Florida.

3. Plaintiff Benjamin Bressack resides in Florida.

4. Plaintiff Anna Carlson resides in Oregon.

5. Plaintiff Krsna Shakti Carlson resides in Oregon.

6. Plaintiff Heidi Chacon resides in Florida.

7. Plaintiff Maya Charnell resides in British Columbia, Canada.

8. Plaintiff Jacob Chatteron resides in British Columbia, Canada.

9. Plaintiff James Peter Chatterton resides in London, England.

10. Plaintiff Christopher Chircop resides in Florida.

11. Plaintiff Zoltan Corbett resides in California.

12. Plaintiff Keith Domingo resides in Pennsylvania.

13. Plaintiff Abhay Durr resides in Florida.

PLAINTIFFS' ORIGINAL COMPLAINT - Page 1

fj06060010.wpd

14.     Plaintiff Melody Gedeon resides in Florida.

15.     Plaintiff Tina Hebel resides in North Carolina.

16.     Plaintiff Nirmala Hickey resides in Florida.

17.     Plaintiff Jens Jensen resides in California.

18.     Plaintiff Vishaka Jokiel resides in Kailua, Hawaii.

19.     Plaintiff Nadim Kesten resides in New York.

20.     Plaintiff Laksmana Keyes resides in Colorado.

21.     Plaintiff Trisha Klimek resides in California.

22.     Plaintiff Brajadevi Levine resides in British Columbia, Canada.

23.     Plaintiff Greg Luczyk resides in British Columbia, Canada.

24.     Plaintiff Frank Lyons resides in Pennsylvania.

25.     Plaintiff Naryana Lyons resides in Pennsylvania.

26.     Plaintiff Joi McMillon resides in Florida.

27.     Plaintiff Tajh Miller resides in California.

28.     Plaintiff Joey Mussacchio resides in Quebec, Canada.

29.     Plaintiff Yuri Nesbitt resides in Colorado.

30.     Plaintiff Anya Pourchot resides in California.

31.     Plaintiff Bridgette Rittenour resides in Brownwood, Texas.

32.     Plaintiff Stephanie Rumple resides in North Carolina.

33.     Plaintiff Uddhava Samanich resides in New York.

34.     Plaintiff Suta das Schramm resides in Arizona.

35.     Plaintiff Brajarani Scioscia resides in Illinois.

PLAINTIFFS' ORIGINAL COMPLAINT - Page 2

fj06060010 wpd

36.    Plaintiff Vilasini Silverman resides in Maryland.

37.    Plaintiff Ananta Sofsky resides in New York.

38.    Plaintiff Justin Sofsky resides in New York.

39.    Plaintiff Christopher Strayhorn resides in California.

40.    Plaintiff Corrina Tillmon resides in New York.

41.    Plaintiff Jessica Tillmon resides in California.

42.    Plaintiff Sita Tortorice resides in Wisconsin.

43.    Plaintiff David Tourjee resides in New Jersey.

44.    Plaintiff Damian Weir resides in California.

**DEFENDANTS:**

1.    Defendant International Society For Krishna Consciousness, or "ISKCON," is an unincorporated association with its principal places of business located in various places throughout the United States, including California and Florida.  Service of process may be made upon Defendant ISKCON by serving Ravindra Svarupa Das a/k/a William Deadwyler, III, the Chairman of the Governing Body of Commissioners.  He resides at 41 West Allens Lane, Philadelphia, Pennsylvania 19119.

2.    Defendant DAMODAR TITLE HOLDING CORPORATION OF DALLAS, INC., is a Texas corporation headquartered in Texas.  Its principal place of business address is 5430 Gurley Avenue, Dallas, Texas 75223.  It may be served by serving its registered agent for service of process, Tom Kerr.

3.    Defendant INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS is a

PLAINTIFFS' ORIGINAL COMPLAINT - Page 3

fj06060010.wpd

Washington corporation headquartered in Washington. Its principal place of business address is 3114 E. Pine St., Seattle, Washington. It may be served by serving its registered agent for service of process, Bruce Melzack.

4.  Defendant ISKCON FOUNDATION, INC. is a Florida corporation headquartered in Florida. Its principal place of business address is P.O. Box 1119, Alachua, Florida 32615. It may be served by serving its registered agent for service of process, Naveen Khurana, 18104 N.W. County Road 239, Alachua, Florida 32615.

5.  Defendant INTERNATIONAL SOCIETY FOR KRISHNA CONSCIOUSNESS OF WASHINGTON is a Washington corporation headquartered in Washington. Its principal place of business address is 1420 228th Ave. SE, Issaquah, Washington, 98027. It may be served by serving its registered agent for service of process, Harry Terhanian.

6.  Defendant ISKCON, INC. is a Pennsylvania corporation headquartered in Pennsylvania. Its principal place of business address is RD #2, Box 1075, Port Royal, Pennsylvania 17082.

7.  Defendant ISKCON KRISHNAFEST USA, INC. is a Texas corporation headquartered in Texas. Its principal place of business address is 5430 Gurley Avenue, Dallas, Texas 75223. It may be served by serving its registered agent for service of process, George Levington.

8.  Defendant ISKCON OF LAKE HUNTINGTON PROPERTY CORPORATION is a New York corporation headquartered in New York. Its principal place of business address is P.O. Box 338, New York, New York 12752.

9.  ISKCON OF PORT ROYAL, INC. is a Pennsylvania corporation headquartered in

PLAINTIFFS' ORIGINAL COMPLAINT - Page 4

Pennsylvania. Its principal place of business is RD #1, Port Royal, Pennsylvania 17082.

10.     Defendant ISKCON OF WEST VIRGINIA is a West Virginia corporation headquartered in West Virginia. Its principal place of business address is RD 1 NBU 24, Moundsville, West Virginia 26041. It may be served by serving its registered agent for service of process, David Waterman.

11.    Defendant TEXAS KRISHNAS, INC. is a Texas corporation headquartered in Texas. Its principal place of business address is 5430 Gurley Avenue, Dallas, Texas 75223. It may be served with process by serving its registered agent for service of process, Joe Dinoffer.

12.     Defendant ISKCON TELEVISION, INC. is a California corporation headquartered in Topanga, California. Its principal place of business address is P.O. Box 556, Topanga, California 90290. It may be served with process by serving its registered agent for service of process, Jeanne Carr, 6133 Bristol Parkway, #100, Culver City, California 90230.

13.     Defendant ISKCON OF LOS ANGELES is a California corporation headquartered in California. It may be served with process by serving its registered agent for service of process, Robert P. Owen, 3714 Watseka Avenue, Los Angeles, California 90034.

14.     Defendant ISKCON OF CALIFORNIA, INC. is a California corporation headquartered in California. It may be served with process by serving its registered agent for service of process, Robert P. Owen, 3764 Watseka Avenue, Los Angeles, California 90034.

15.     Defendant ISKCON OF SOUTHERN CALIFORNIA is a California corporation headquartered in California. It may be served with process by serving its registered agent for service of process, Dennis Brown, 3765 Watseka Avenue, Suite E, Los Angeles, California 90034.

16.     Defendant ISKCON OF SAN DIEGO is a California corporation headquartered in

PLAINTIFFS' ORIGINAL COMPLAINT - Page 5

fj06060010.wpd

California. It may be served with process by serving its registered agent for service of process, David Bridges, 1030 Grand Avenue, San Diego, California 92109.

17. Defendant GREGORY GOTTFRIED is an Executor of the Estate of A.C. BHAKTIVEDANTA SWAMI PRABHUPADA; he resides in Bangkok, Thailand.

18. Defendant ROBERT GRANT is an Executor of the Estate of A.C. BHAKTIVEDANTA SWAMI PRABHUPADA; he resides in New York.

19. Defendant THOMAS HERTZOG is an Executor of the Estate of A.C. BHAKTIVEDANTA SWAMI PRABHUPADA; as set forth below, he resides in Dallas, Texas.

20. Defendant GHOPAL KHANNA is an Executor of the Estate of A.C. BHAKTIVEDANTA SWAMI PRABHUPADA; as set forth below, he resides in Montreal, Quebec.

21. Defendant HOWARD RESNICK is an Executor of the Estate of A.C. BHAKTIVEDANTA SWAMI PRABHUPADA; as set forth below, he resides in Beverly Hills, California.

22. Defendant GLEN TETON is an Executor of the Estate of A.C. BHAKTIVEDANTA SWAMI PRABHUPADA; his address and whereabouts are unknown.

## DEFENDANT MEMBERS OF THE GOVERNING BODY OF COMMISSIONERS (GBC) RESIDING IN THE U.S.A

1. Defendant FARAMARZ ATTAR (Krishna name, "Atreya Rsi das") resides at 550 North Eisenhower Drive, Beckley, W. Virginia 25801. Mr. Attar was a member of ISKCON'S governing body commission (the "GBC") from 1975 to 1987.

2. Defendant CHARLES BACIS (Krishna name, "Bhavananda das") was a member of the GBC from 1978 to 1987. He may be served at ISKCON, 383 Lenox Avenue, Detroit, Michigan

PLAINTIFFS' ORIGINAL COMPLAINT - Page 6

fj06060010.wpd

48215.

3.      Defendant WILLIAM BERKE (Krishna name, "Bali Mardan das") is a resident of New York, New York.  Mr. Berke was a member of the GBC from 1977 to 1978.

4.      Defendant ROBERT CORENS, (Krishna name, "Rapanuga Swami") resides in Alachua, Florida.  Mr. Corens was a member of the GBC from 1978 to 1986.

5.      Defendant WILLIAM DEADWYLER, III (Krishna name, "Ravindra Svarupa Das") is  Chairman of the Governing Body of Commissioners.  He resides at 41 West Allens Lane, Philadelphia, Pennsylvania 19119.

6.      Defendant WILLIAM EHRLICHMAN (Krishna name, "Bhagavan Swami") is a resident of Berkeley, California.  Mr. Ehrlichman was a member of the GBC from 1975 to 1987.

7.      Defendant JOHN FAVORS (Krishna name, "Bhakti Tirtha Swami") resides at 600 Ninth St., N.E., Washington D.C. 20002. Mr. Favors was a member of the GBC from 1982 to 1999.

8.      Defendant STEVEN GOREYNO a/k/a STEVEN GUARINO (Krishna name, "Satsvarupa das") is a resident of Baltimore, Maryland.  Mr. Goreyno a/k/a Guarino was a member of the GBC from 1975 to 1987.

9.      Defendant MICHAEL GRANT (Krishna name, "Mukunda Goswami") resides at 10310 Oaklyn Drive, Potomac, Maryland 20854.  Mr. Grant was a member of the GBC from 1984 to 1999.

10.     Defendant KEITH HAM (Krishna name, "Kirtanananda") resides in the Low Security Correctional Institution in Butner, North Carolina.  Mr. Ham was a member of the GBC from 1975-1986.

11.     Defendant THEODORE RICHARD HARRIS (Krishna name, "Panca Dravida

PLAINTIFFS' ORIGINAL COMPLAINT - Page 7

Swami") resides in California.  Mr. Harris was a member of the GBC from 1977 to 1986.

12.    Defendant THOMAS HERTZOG (Krishna name, "Tamal Krishna Goswami") resides at 5430 Gurley Ave., Dallas, Texas 75223.  Mr. Hertzog was a member of the GBC from 1975 to 1999.

13.    Defendant JEFFREY HICKEY (Krishna name, "Jagadish das") resides in Florida. Mr. Hickey was a member of the GBC from 1975 to 1994.

14.    Defendant GOPAL KHANNA (Krishna name, "Gopal Krishna Goswami") resides at 1626 Pie IX Blvd., Montreal, Quebec, H1V2C5. Mr. Khanna was a member of the GBC from 1975 to 1999.

15.    Defendant HANS KARY (Krishna name, "Hansadutta Swami") is a resident of Cloverdale, California.  Mr. Hary was a member of the GBC from 1975 to 1984.

16.    Defendant WILLIAM OGLE (Krishna name, "Balavanta das") is a resident of New York, New York.  Mr. Ogle was a member of the GBC from 1976 to 1999.

17.    Defendant HOWARD RESNICK (Krishna name, "Hrdayananda das Goswami") resides at 153 N. Arnaz Dr., Beverly Hills, California 90211. Mr. Resnick was a  member of the GBC from 1975 to 1999.

18.    Defendant BRUCE SCHARF (Krishna name, "Brahmananda") is a resident of Miami, Florida.  Mr. Scharf was a member of the GBC from 1975 to 1987.

19.    Defendants Does 1 - 30.  Plaintiffs are not aware of the true names and capacities, whether individual, corporate, or otherwise, of defendants Does 1 - 30, inclusive, and therefore sue said Defendants by such fictitious names.  Plaintiffs will seek leave of this court to amend this complaint to include the true names and capacities of the defendants sued herein as Does 1 - 30,

inclusive, when the same have been ascertained. Plaintiffs are informed and believe, and thereby allege, that each of the defendants designated herein as a "Defendant Doe" acted in concert with each and every other defendant, intended to, and did, participate in and cause the events, acts, practices and courses of conduct alleged herein, or, alternatively, acted as the principal or agent of the other defendants or in the course and scope of said employment or agency, and proximately caused damages and injuries thereby to the Plaintiffs as alleged herein.

II.

## JURISDICTION AND VENUE

1.      Venue is proper in that a substantial portion of the events giving rise to the claims iterated herein occurred in Dallas County, Texas, and one or more Defendants are residents of or have their principal business in the State of Texas.

2.      The amount in controversy herein exceeds the minimum jurisdictional requirements of this Court exclusive of interest and costs.

3.      All Defendants are subject to the jurisdiction of this Court pursuant to 18 U.S.C. §1962 *et seq.,* the RICO nationwide service of process statute.

III.

## ORGANIZATION OF DEFENDANTS

Defendant International Society of Krisha Consciousness, a/k/a ISKCON, and sometimes known as "Hare Krishna" or "the Hare Krishnas," is a spiritual institution based on a faith founded in the United States by A.C. Bhaktivedanta Swami Prabhupada (a/k/a "Prabhupada") in the United States in July, 1966.

PLAINTIFFS' ORIGINAL COMPLAINT - Page 9

fj06060010.wpd

## A.   ISKCON'S GOVERNING BOARD

1.     The Governing Body Commission of ISKCON (herein, "GBC")  is the ultimate administrative and governing body of the movement.  It was established in 1970, at the direction of Prabhupada, the movement's founder.  The GBC initially consisted of eleven high-ranking leaders in the movement.  Although the primary activity of the GBC is in the United States, it governs ISKCON worldwide.

## B.   MOVEMENT

2.     ISKCON encouraged many of its followers to forego all of their material possessions and devote their lives to the furtherance of "Krishna Consciousness."  This often included the solicitation of donations from travelers at airports, public display of "chanting" and street performances, and selling various of Prabhupada's and ISKCON's books.  Because of the total devotion demanded of its followers by ISKCON, adult "devotees" of ISKCON were encouraged, and, in order to advance within the faith, *required* to relinquish their primary parental duties and place their children in ISKCON-founded and sponsored schools, primarily boarding schools, known as "gurukulas,"  the outward or stated purpose being to indoctrinate the children of ISKCON devotees into the disciplines of Krishna Consciousness.

## C.   GURUKULA BOARDING SCHOOLS

3.     The first gurukula boarding school established by ISKCON was located in Dallas, Texas, and commenced operation in 1972.  By 1978, there were a total of eleven gurukula schools in North America, including gurukulas in Los Angeles, California; Seattle, Washington; and New Vrindaban, West Virginia.  The gurukula boarding school system in ISKCON was and is administered by the GBC.

PLAINTIFFS' ORIGINAL COMPLAINT - Page 10

fj06060010.wpd

4.      Far from the promised transcendental spiritual and secular education purported to be disseminated at the gurukulas, in fact ISKCON's gurukulas quickly became havens for widespread physical, emotional, mental and sexual child abuse.

5.      The Defendants, at least in part, established and operated the school in order to permit the parents to be freed to solicit and raise money for the benefit of the gurus, temple leaders, and ISKCON corporations.

Raising funds and distribution of money were at the core of, and a pattern and practice of, the Defendant's wrongful conduct and racketeering practices.

ISKCON and its leaders also enriched themselves by granting special favors to large fund raisers and donors, even if some large donors were drug dealers and other criminal elements. The special favors include, among others:

(a)     Granting teaching positions to sexual predators so they would have access to children for their sexual gratification;

(b)     Giving young girls from the gurukulas as brides to older donor men;

(c)     Creating "asylum" and a ring of protection against apprehension of fugitives, including those dealing illegally in arms, drugs and murder, within the ISKCON enterprise;

(d)     Destroying evidence and failing to report criminal conduct on the part of ISKCON and devotees.

6.      Although sexual, physical and emotional abuse has occurred in almost every ISKCON school, the worst and most widespread abuse was inflicted at gurukulas in Dallas, Texas; New Vrindaban, West Virginia; Los Angeles, California; Seattle, Washington; Port

PLAINTIFFS' ORIGINAL COMPLAINT - Page 11

fj06060010.wpd

Royal, Pennsylvania and Lake Huntington, New York. Additionally, profound, severe and extensive abuse of minor boys from the United States and Canada took place at the ISKCON Vrindaban and Mayapur boarding schools in India.

**D.      INDIA BOARDING SCHOOL**

7.      In a conscious effort to avoid policing and scrutiny by U.S.A. child protection agencies, ISKCON took a large portion of its boarding school activities overseas to India. In India, ISKCON managed at least two profoundly abusive boarding schools for boys. These were the Vrndavan and Mayapur schools. Both were staffed and controlled by appointees of ISKCON who were, for the most part, assigned from the United States. The students sent there were almost exclusively from the United States, and the management policies, devised and implemented by the GBC, originated in the U.S.A. The Indian schools were among the worst offenders and abusers of minor boys, and many of the Indian school teachers and leaders were also teachers, leaders and abusers in United States schools.

IV.

**WRONGFUL AND ILLEGAL ACTS OF ABUSE OF MINORS**

**A.      YEARS OF PRIMARY ABUSE**

1.      The sexual, physical and emotional abuse of the minor children occurred primarily between the years 1972 and 1990, although abuse continued after 1990 and, it is believed, continues to the present. The sexual, physical and emotional abuse of minor children was inflicted on children from as young as 3 years of age to 18 years of age, and included both boys and girls.

2.      The abuse to which the ISKCON children were subjected was inflicted on some

PLAINTIFFS' ORIGINAL COMPLAINT - Page 12

fj06060010.wpd

children for several years.  It included a pattern and practice of sexual abuse of both boys and girls, physical abuse, and emotional abuse.  In many instances, the abuse could be accurately described as torture of children.  Not all of the following described acts of child abuse were carried out on every child, but every plaintiff in this case was subject to multiple forms of child abuse over extended periods of time, some for years.  Some examples of the types of abuse and neglect to which the children, ranging in age from 3 years to 18 years, were subjected include but are not limited to:

**B.**   **ABUSE INFLICTED**

3.  Sexual abuse including rape, oral sex, intercourse with children, sexual fondling of children, and masturbation with children.

4.  Physical beatings of children with boards, branches, clubs, and poles.

5.  Physical beatings by adult teachers and school leaders with fists to the head and stomach.

6.  Kicking the children into submission.

7.  Children were in some instances made to walk great distances in bitter cold, including snow and rain, without jackets, coats, or shoes.

8.  Children were often forced to sleep on cold floors and in unheated rooms.

9.  Children were frequently deprived entirely of medical care or provided such inadequate medical care as to suffer long-term and, in some instances, permanent injury.  The medical conditions for which children were not treated included malaria, hepatitis, yellow fever, teeth being knocked out, broken facial bones, and broken bones in their hands, often inflicted as they attempted to shield themselves from beatings.

10. Children were sometimes kept in filthy conditions.  In at least one instance, a local group utilized what had recently been a cattle or

PLAINTIFFS' ORIGINAL COMPLAINT - Page 13

horse barn for a nursery.

11.     In almost every school the children were kept in severely overcrowded conditions, often forced to sleep shoulder to shoulder on the floor or in small rooms in three-high bunks with 10 or 12 children to each tiny room.

12.     The children were physically abused by being awakened every day in the early morning hours (generally at 4:00 a.m.) and subjected to a cold shower, after which they were taken, without any breakfast, to a daily religious service. At some schools, the children were forced to walk great distances in the dark to attend the service, and often in cold or rainy conditions, clothed only in their thin gown-like "dohti."

13.     The children were not provided bathroom tissue, but instead were expected to wipe themselves with their fingers, after which they would dip their fingers into a bowl of water.

14.     As punishment for not cleaning themselves thoroughly, children were scrubbed with steel wool until their skin was raw and sometimes bleeding.

15.     Children were abused when they were forced to sleep on their wet blankets or in tubs as punishment if they wet their bedding.

16.     Some children were forced to wear their soiled underclothes on their heads for long periods of time because they had wet themselves.

17.     Children were often forced to go without food entirely, either because there was none, or as punishment. When food was provided, it was always inadequate for a growing child's diet.

18.     The inadequate food that was provided was often prepared in unsanitary conditions, was of very poor quality and so unpleasant that even hungry children frequently could not eat it. In at least one school, the children learned as a matter of routine to remove insects from their food before eating it.

19.     Each child was expected to eat what they were provided. If they did not do so, their served portion was kept on their plates until the next meal when it was served again. This

process often continued until the cold food -- even moldy and insect-infested -- was swallowed.

20.    In some schools, children were forced to lick up their vomit from any foul food they may have thrown up.

21.    At New Vrindavan, three young boys, about six or seven years of age, who worked in the kitchen, took some food to their hungry friends. They were caught and punished by being gagged, having bags placed over their heads, and being put in a small room for several days with only a bucket for their waste and no food or water. One of the same boys was later slammed by a teacher into a marble wall, resulting in a loss of some teeth and fractured facial bones.

22.    Children were controlled by various threats to hurt or kill them and by punishments. Young children, strictly limited to a vegetarian diet, were continually terrorized when told that non-Krishnas were meat-eaters, that they ate each other, and that the children, if given to or taken by the meat-eaters, would themselves be eaten.

23.    Children often saw rats in their rooms and schools. Some children (such as those at the school in Dallas) were told the rats lived in a particular old closet, and the child would be, and often was, placed in the closet if they didn't do as told.

24.    One form of punishment included forcing little children to stand on a crate for long periods of time in a darkened closet "so the rats would not eat them."

25.    Very young children were in fact placed in those dark and locked closets and left afraid and crying for hours at a time. They were locked overnight in dark cellars with dirt floors. One young child was made to sleep alone in the loft of a cold barn for many nights.

26.    Sometimes the children were sent by their superiors to massage and bathe the religious gurus and then drink their now "blessed bath water."

27.    In some cases, children were stuffed into trash barrels for periods of two to three days, with the lid on, as punishment for relatively trivial "sins."

PLAINTIFFS' ORIGINAL COMPLAINT - Page 15

28. Children were almost universally told that if they disclosed their condition or complained to their parents or others, they would be severely punished. When complaints were made, the children were publicly and often severely beaten or subjected to other forms of punishment.

29. Girls, as young as 12 or 13 years, were frequently "given" or "promised" to an older male in the movement. Although their marriages were generally not sexually consummated until the child was at least 16 or 17 years old, the little girls were terrorized by the threats, and often reality, of being given away by their leaders to become engaged to marry "strange old men."

30. Children were often forced to lie awake in their beds or sleeping bags and listen as their little friends were sexually molested by teachers and other leaders.

31. The children were emotionally abused by subjecting them to near-total parental and societal isolation. In an effort to totally control their minds, the children were, in most cases, separated and isolated from their parents and were not allowed to have regular contact with their parents. Personal visits, correspondence, and telephone calls were either forbidden or discouraged. Gifts, particularly of food, were intercepted. For example, one young boy felt abandoned by his parents, and had no contact with his family for more than a year. He later learned the one small package of cookies sent by his mother was intercepted and kept from him.

32. Children were frequently moved to different schools in different states without the consent (or, sometimes, knowledge) of parents. Some children were hidden from parents. Some boys were shipped out of the country to ISKCON schools in India. In at least some cases, after the parents discovered their child's whereabouts and made arrangements for them to come home, their plane tickets were intercepted, and torn up in front of the children. Then, these children were punished for their parents' attempt to bring them home.

33. Even though the children were given by their parents to ISKCON to educate, except for the reading of their "vedic

PLAINTIFFS' ORIGINAL COMPLAINT - Page 16

scriptures," the children received little or no education.

34.  Because of near-total isolation from the outside world and lack of education, the children who remained within the ISKCON schools for extended periods of time were totally unequipped to enter outside society. They have experienced extreme difficulty in earning a living, entering and maintaining relationships, including marriage, and in adapting to the laws and regulations of society. Many are in need of extended psychological and/or vocational training, rehabilitation, and medical care.

35.  The founder of the institution, Prabhupada, was informed in 1972, at a time when he totally controlled the institution, that extensive physical and sexual abuse of minor ISKCON children was occurring, but he concealed the wrongdoing from the public, parents and all but a handful of close advisors.

36.  Despite having been alerted to the physical, emotional, mental and sexual abuse of children in its gurukula boarding schools and other schools as early as the 1970s, ISKCON and the other defendants conspired to suppress any public disclosure, or disclosure to gurukula children's parents, of the pattern and practice of rampant abuse at its gurukulas. ISKCON fraudulently concealed this information for decades, allowing the offending gurukula teachers and supervisors continued access to children for their sexual gratification and to subject them to physical, emotional and mental abuse. Defendants also endeavored to dissuade and discourage parents of gurukula children from visiting the schools. This was done at least in part to preserve the secrecy surrounding the abuse of the Krishna children.

37.  ISKCON, by and through its GBC, knew that if it did not conceal and keep secret the sexual, physical, and emotional abuse it had learned was taking place in many of its schools, the very viability of the movement would be jeopardized. ISKCON would face a large loss of

PLAINTIFFS' ORIGINAL COMPLAINT - Page 17

students and their parents from the movement and with that a large loss of funds and fundraisers. The individual income of many members of the GBC would have been adversely impacted. Its leaders would also have been subject to criminal and civil sanctions. The GBC made conscious decisions to conceal the fact that injury had been, and was continuing to be, inflicted on minor boys and girls.

V.

**WRONGFUL AND ACTIONABLE CONDUCT OF THE DEFENDANTS**

The actionable conduct described herein, unless stated otherwise, refers to the conduct of all the defendant associations, corporations and individuals, both acting collectively and singularly, and is stated as ISKCON's conduct or acts.

**A.    NEGLIGENCE**

1.    At all times material herein from 1971 through 1996, Defendant ISKCON, through the GBC, operated and supervised the gurukulas across the United States and in India.  The teachers and supervisors at the boarding schools and gurukulas acted upon the delegated authority of ISKCON as its agents.  The gurukula teachers and supervisors came to know the Plaintiffs and gained access to them because of their status as leaders of ISKCON indoctrination. The gurukula teachers and supervisors engaged in the described wrongful conduct while in the course and scope of their duties with ISKCON and its affiliated entities.  Therefore, ISKCON is liable for the wrongful conduct of its gurukula teachers and supervisors.

2.    ISKCON negligently selected and placed the offending gurukula teachers and supervisors in positions of trust, confidence and authority and in direct, unsupervised contact with minor children, when they either had no knowledge of the teachers and supervisors'

PLAINTIFFS' ORIGINAL COMPLAINT - Page 18

backgrounds or ISKCON had actual or apparent knowledge of these individuals' dangerous propensities towards physical, emotional, mental, and sexual abuse of the gurukula children.

3.   ISKCON failed to establish written guides and procedures to safeguard the children entrusted to it.

4.   ISKCON failed to provide proper training to its teachers and supervisors.

5.   ISKCON encouraged, through its pattern and practice, the herein described acts of wrongful and illegal conduct by its agents.

6.   ISKCON failed to warn Plaintiffs or their families of the offending gurukula school teachers and supervisors' dangerous propensities towards abuse of minor children. Indeed, it was ISKCON'S pattern and practice to encourage this abusive behavior from the teachers.

7.   ISKCON was under a duty to disclose the extent of the problem of physical, emotional, mental, and sexual abuse by gurukula teachers and supervisors towards the gurukula children, and the severe psychological problems that would result from such abuse if not properly treated, but failed to make such disclosures.

8.   ISKCON failed to notify state and governmental authorities of known and suspected abuse when it was the law that it do so.

9.   ISKCON failed to provide reasonable supervision of its teachers and supervisors.

10.   ISKCON failed to provide adequate staffing to provide a safe environment.

11.    ISKCON failed to provide adequate funding to its schools, even though it represented to parents and others it would do so, and despite the facts, parents and others raised larger amounts of money for the operation of ISKCON enterprises.

PLAINTIFFS' ORIGINAL COMPLAINT - Page 19

fj06060010 wpd

12.     ISKCON failed to provide adequate food, clothing, shelter and education in its boarding schools, even though it represented to parents and others it was doing so.

13.     The older students were sometimes appointed "monitors." The Defendants knew and encouraged  monitors to abuse and beat the children. Actual rapes and beatings of children by the older "monitors" were ignored by the ISKCON enterprise.

14.     ISKCON's conduct during the time and occasions of the abuse in question resulted in both negligent and intentional infliction of emotional distress upon the Plaintiffs.

**B.     ISKCON'S BREACH OF FIDUCIARY DUTY**

15.     ISKCON, as a religious organization, is granted special privileges and immunities in the United States by society and is in a special fiduciary relationship with the Plaintiffs. ISKCON owed the Plaintiffs, who were entrusted to its care, the highest duty of trust and confidence and was required to act in the childrens' best interest.  ISKCON's actions and inactions, as described herein, violated that relationship when ISKCON failed to act with the highest degree of trust and confidence to protect the Plaintiffs from physical, emotional, mental and sexual abuse.

16.     Plaintiffs and their parents were, at the relevant times, deeply devout followers of defendants.  Plaintiffs and their parents entrusted their entire physical, emotional, economic, and spiritual lives to the control and direction of Defendants and to the Defendant entities of which Plaintiffs were members and/or devotees.  Plaintiffs and their parents relied upon the promises and representations of the Defendants.

17.     As devoted children, unable to care for or make decisions for themselves, and entrusted in the care of the child care facilities and schools operated by the Defendants,

PLAINTIFFS' ORIGINAL COMPLAINT - Page 20

Plaintiffs were owed a fiduciary duty by each of the individual entities and by all the Defendants. By failing to take steps to prevent, detect, and minimize the harm from the incidents of abuse suffered by Plaintiffs, the Defendants breached their fiduciary duty to Plaintiffs.

**(i)    CONSTRUCTIVE FRAUD**

18.    As fiduciaries of Plaintiffs, Defendants owed a duty to Plaintiffs to inform their parents/guardians of the fact that the child care facilities and schools operated by defendants were staffed by unqualified individuals, did not contain sufficient staffing to prevent, detect, and to minimize the effects of incidents of abuse, and that the child care facilities and schools were below the child safety standards that would reasonably be anticipated.

19.    By reason of the failure to make these disclosures to Plaintiffs or Plaintiffs' guardians, and the resulting detrimental reliance thereon, the Defendants are guilty of constructive fraud.

**(ii)    BREACH OF CONTRACT/BREACH OF WARRANTY**

20.    At the time that the ISKCON Defendants accepted Plaintiffs into the schools and child care facilities operated by them, (and, at the same time, collected payment from Plaintiffs' parents for school tuition and/or room and board), they did, by both their conduct and verbal statements, expressly and impliedly agree and warrant, in exchange for valuable consideration, to provide good quality child care, schooling, boarding services in a safe, nurturing environment, such that Plaintiffs would, among other things, not be intentionally or negligently harmed. Plaintiffs were intended third-party beneficiaries of this express and implied agreement and warranty between the Defendants and their parents.

PLAINTIFFS' ORIGINAL COMPLAINT - Page 21

21.     ISKCON and defendants breached their express and implied contract and warranty to Plaintiffs, and as a result of those breaches, Plaintiffs were harmed.

## C.     **DEFENDANTS BREACHED THEIR STATUTORY DUTY**

22.     In most jurisdictions where the Defendants operated, they were under a statutory duty to protect children entrusted to their care from physical and sexual abuse and to report to various child welfare and child protective agencies any known or suspected occurrences of sexual or physical abuse of children.  The Defendants breached their statutory duty in that: (a) they engaged in a pattern and practice of, or knowingly permitted their agents to, physically and/or sexually abuse minor children; and (b) the Defendants learned of suspected sexual and physical abuse of children but concealed its existence from state authorities, and to this day continue to fail to report known instances of physical or sexual abuse of children entrusted to its care.

## D.     **GROSS NEGLIGENCE**

23.     ISKCON, at the time and on the occasions in question, acted with heedless and reckless disregard for the safety of the Plaintiffs, which disregard was the result of conscious indifference to the rights, welfare and safety of the Plaintiffs in violation of the laws of the State of Texas, and other states.

## E.     **DEFENDANTS' NEGLIGENT ASSUMPTION OF RISK OF INTENTIONAL OR CRIMINAL CONDUCT**

24.     Plaintiffs incorporate by reference as if set forth at length herein all previous allegations set forth above, and assert that ISKCON and the other Defendants are liable for acts and/or omissions pursuant to the Restatement (Second) of Torts, Section 302B, under the legal doctrine of negligent assumption of risk of intentional or criminal conduct.

PLAINTIFFS' ORIGINAL COMPLAINT - Page 22

fj06060010.wpd

>An act or an omission may be negligent if the actor realizes or
>should realize that it involves an unreasonable risk of harm to
>another through the conduct of the other or a third person which is
>intended to cause harm, even though such conduct is criminal.

Restatement (Second) of Torts, Section 302B.

25.     Defendant ISKCON and the other Defendants realized or should have realized that

the abusive gurukula teachers and supervisors posed an unreasonable risk of harm to minor

children, including Plaintiffs.

## F.   DEFENDANTS' NEGLIGENT MISREPRESENTATION INVOLVING RISK OF PHYSICAL HARM

26.     Plaintiffs incorporate by reference as if set forth at length herein all previous

allegations set forth above, and assert that ISKCON and the other Defendants are liable for acts

and/or omissions pursuant to the Restatement (Second) of Torts, Section 311, under the legal

doctrine of negligent misrepresentation involving risk of physical harm.

>(1)     One who negligently gives false information to another is subject to liability
>for physical harm caused by action taken by the other in reasonable reliance upon
>such information, where such harm results
>>(a)     to the other, or
>>(b)     to such third persons as the actor should expect to be put in
>>         peril by the action taken.
>
>(2)     Such negligence may consist of failure to exercise reasonable care
>>(a)     in ascertaining the accuracy of the information, or
>>(b)     in the manner in which it is communicated.

Restatement (Second) of Torts, Section 311.

27.     Defendant ISKCON and the other Defendants informed parents of the abused

children that ISKCON would provide a safe and wholesome environment for their children.

Defendants' failure to ascertain and apprise Plaintiffs and their families of the propensity of

offending gurukula teachers and supervisors to physically, emotionally, mentally and sexually

PLAINTIFFS' ORIGINAL COMPLAINT - Page 23

abuse minor children, and ISKCON and the other Defendants' representation that the offending

gurukula teachers and supervisors were not dangerous to young children placed Plaintiffs in

peril, and caused them injury.

VI.

## CONSPIRACY AND FRAUDULENT CONCEALMENT

1.      ISKCON has acted in concert with the other Defendants in a pattern and practice

to fraudulently conceal the extent and nature of the physical, emotional, mental, and sexual

abuse occurring at its gurukulas, boarding schools, and child care centers, as well as the harmful

effects of that abuse, continuing through the present day.

2.      All Defendants herein entered into a civil conspiracy to act in concert,

accompanied by a meeting of the minds regarding concerted action, the purposes of which were

to suppress and minimize public knowledge (as well as widespread knowledge within ISKCON)

of the rampant physical, emotional, mental and sexual abuse of minor children in the gurukulas

by teachers and supervisors, and to take a uniform position and approach to the handling of

reports of abuse. This uniform position and approach was designed to avoid criminal

prosecution of the gurukula teachers and supervisor offenders, to avoid civil litigation and to

prevent or minimize claims for damages, to avoid public exposure of the sexual and other abuse

of children by teachers and supervisors at the gurukulas, to protect the reputation of ISKCON

and "Hare Krishnas" from scandal, and thus to insure the continued financial contributions of

Krishna devotees and outside supporters to ISKCON. This conspiracy to conceal includes

spoliation of evidence and is ongoing. Based on these actions, the Plaintiffs allege that the

Defendants are equitably estopped from asserting any defense of limitations.

PLAINTIFFS' ORIGINAL COMPLAINT - Page 24

fj06060010.wpd

3.     This ongoing conspiracy and concert of action was carried out by Defendants to fraudulently conceal the fact that Defendants have committed acts of negligence, gross negligence, fraud and breach of fiduciary duty, and the other wrongful conduct described herein, and have engaged in concerted action to commit acts of negligence, gross negligence, fraud and breach of fiduciary duty.

4.     In the absence of this conspiracy and concert of action, Defendants would have responded to repeated notice of the abuse children suffered at the hands of gurukula teachers and supervisors and issued general and specific warnings to the entire body of Krishna devotees, particularly the parents of children in the gurukulas. Had a proper warning been issued, the offending teachers and supervisors would never have had unsupervised access to Plaintiffs and other minor children, and this physical, emotional, mental and sexual abuse and exploitation would never have occurred. Thus, Defendants' actions in furtherance of this conspiracy are a proximate cause of the injury and damages herein.

5.     As a part of their conspiracy to conceal the physical, mental, emotional and sexual abuse of children by the offending gurukula teachers and supervisors, Defendants followed a practice of refusing to investigate suspected abuse, or to disclose and warn of the dangers of physical, mental, emotional and  sexual abuse by gurukula teachers and supervisors despite actual notice and knowledge of the risk dating back over two decades.  Defendants failed to aggressively address abuse issues by such actions as promulgating proper policies for the appointment of gurukula teachers and supervisors.

6.     Plaintiffs allege that ISKCON officials, with others as plead herein, also engaged in a conspiracy to avoid the prosecution of gurukula teachers and supervisors and to cover up the

PLAINTIFFS' ORIGINAL COMPLAINT - Page 25

fj06060010.wpd

physical, mental, emotional and sexual abuse of minor children suffered in the gurukulas. The purpose of this conspiracy was to prevent criminal prosecution, avoid adverse publicity, prevent claims for damages by the numerous minor victims, and to avoid exposure of this conspiracy designed to conceal the claims arising from the crimes of these gurukula teachers and supervisors appointed by ISKCON through the GBC. Further, officials of ISKCON, in furtherance of the overall conspiracy alleged, engaged in affirmative acts to conceal the existence of this conspiracy, and to conceal acts of fraud, breach of fiduciary duty, negligence, and gross negligence.

## A.    DEFENDANTS' CONCERT OF ACTION

7.      Plaintiffs incorporate by reference as if set forth at length herein all previous allegations set forth above, and assert that ISKCON and the other Defendants are liable for acts and/or omissions pursuant to the Restatement (Second) of Torts, Section 876, under the legal doctrine of concert of action, and as agents of these entities, under which theories Plaintiffs seek damages from all Defendants jointly and severally.

## B.    DEFENDANTS' INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

8.      Plaintiffs incorporate by reference as if set forth at length herein all previous allegations set forth above.

9.      In administering the abuse against Plaintiffs, in conspiring to cover up that abuse, in ratifying the acts of those gurukula workers who administered the abuse, and in conspiring to assist those gurukula workers in avoiding detection by law enforcement agencies, Defendants engaged in a pattern and practice of outrageous conduct that intentionally inflicted severe emotional distress upon Plaintiffs, for which all defendants are liable both in actual and punitive

PLAINTIFFS' ORIGINAL COMPLAINT - Page 26

damages.

VII.

## RICO VIOLATIONS

**A.    VIOLATION OF THE FEDERAL RACKETEER-INFLUENCED AND CORRUPT ORGANIZATIONS ACT (RICO) 18 U.S.C. §§ 1962(C) AND 1962(D)**

1.    Plaintiffs restate and incorporate herein the foregoing allegations contained in this Complaint.

2.    This claim for relief is asserted against each of the Defendants and arises under 18 U.S.C. § 1962(c) and (d) of RICO, which provide:

(c)    It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs  through a pattern of racketeering activity....

(d)    It shall be unlawful for any person to conspire to violate any of the provisions of subsection .  . . (c) of this section.

3.    At all relevant times, each of the Defendants was a "person" within the meaning of 18 U.S.C. § 1961(3), as each of the Defendants was "capable of holding a legal or beneficial interest in property."

4.    At all relevant times, Defendants have constituted an "enterprise", within the meaning of 18 U.S.C. §1961(4).  This enterprise is an ongoing organization whose constituent elements function as a continuing unit in maximizing the sales of Krishna/ISKCON literature and paraphernalia , and in concert to bilk followers, including Plaintiffs and their parents and/or guardians, out of their incomes and net worth. The public relations enterprise has an

PLAINTIFFS' ORIGINAL COMPLAINT - Page 27

ascertainable structure and purpose beyond the scope of Defendants' predicate acts and their conspiracy to commit such acts. This "Krishna Enterprise" has engaged in, and its activities have affected, interstate and foreign commerce. The Krishna Enterprise continues to date through the concerted activities of Defendants to actively disguise the nature of their wrongdoing, to conceal the proceeds thereof, and to conceal Defendants' participation in the enterprise in order to avoid and/or minimize their exposure to criminal and civil penalties and damages.

5. Each Defendant has been associated with the Krishna Enterprise. Each Defendant helped to direct the enterprise's actions and manage its affairs. Each Defendant conducted or participated, directly or indirectly, in the conduct of the Krishna Enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c). The Defendants' pattern of racketeering activity dates from at least 1971 and continues to the present, and threatens to continue in the future.

6. The Krishna Enterprise exists separate and apart from the Defendants' racketeering acts. It is an ongoing organization whose members have been in frequent communication. It has a consensual decision-making structure used to coordinate strategy, suppress the truth about the abuse in the gurukulas, bilk followers, including Plaintiffs, out of their incomes and net worth, and otherwise further Defendants' fraudulent scheme.

7. Each Defendant "conduct[ed] or participate[d], directly or indirectly, in the conduct of [the] enterprise's affairs through a pattern of racketeering activity," in violation of 18 U.S.C. § 1962(c). The Defendants' pattern of racketeering activity dates from 1971 through the present and threatens to continue in the future.

8.      The Defendants' multiple predicate acts of racketeering include:

a.      Mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.  The Defendants engaged in schemes to defraud members of the public and private and governmental entities which bear responsibility for child welfare.  Defendants executed or attempted to execute such schemes through the use of the United States mails and through transmissions by wire, radio and television communications in interstate commerce.

b.      Additional predicate acts of racketeering include obstruction of justice in the form of threatening and intimidating  witnesses in violation of 18 U.S.C. § 1512, and threatening to retaliate against witnesses, in violation of 18 U.S.C. § 1513.  Upon information and belief, the Defendants have attempted to influence testimony, principally by  making threats. These violations include attempts to influence the testimony of former ISKCON members and their families through threats, intimidation, and harassment, physical harm and murder.

c.      Predicate acts include sending fraudulent Krishna literature and gurukula advertisements through the mails  and/or using the mails to promote and advertise Krishna and the gurukulas, in violation of 18 U.S.C. § 1461, which prohibits use of the mails to deliver any "article or thing designed, adapted, or intended . . . for any indecent or immoral use" and use of the mails to circulate any "paper, writing, advertisement, or representation that any article, instrument, substances, drug, medicine, or thing may, or can be used or applied . . . for any indecent or immoral purpose" and any "description calculated to induce or incite a person to so use or apply any such article, instrument, substance, drug, medicine, or thing."

d.      Predicate acts of racketeering also include attempting to intimidate one or more witnesses in pending or prospective legal proceedings, in violation of 18 U.S.C. §§ 1512,

PLAINTIFFS' ORIGINAL COMPLAINT - Page 29

fj06060010.wpd

1513, and 18 U.S.C. § 1951(a).

e. The tactics include the use of facilities in interstate or foreign commerce to distribute the proceeds of unlawful activity and otherwise to promote, manage, establish, carry on or facilitate the promotion, management, establishment, or carrying on of unlawful activity, in violation of 18 U.S.C. § 1952.

f. The predicate acts also include engaging in monetary transactions involving the proceeds of crime in violation of 18 U.S.C. § 1957, which prohibits "knowingly engag[ing] or attempt[ing] to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specific unlawful activity," including mail and wire fraud. 18 U.S.C. §§ 1957(f)(3) and 1956 (c)(7)(A).

9. The acts form a "pattern" of racketeering activity. They have been related in their common objectives of maximizing the wealth of the Krishna Enterprise, misleading the public and government regulators which bear responsibility for child welfare, and suppressing the truth concerning the abuse taking place in the gurukulas.. These acts have had the same or similar purposes, results, participants, victims and methods of commission. The acts have been consistently repeated and are capable of further repetition.

10. Each defendant also conspired to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d).

11. Plaintiffs have been injured in their property by reason of Defendants' violations of 18 U.S.C. §§ 1962(c) and (d), because Plaintiffs have been required to incur significant costs and expenses attributable to gurukula abuse and treatments they have been forced to incur as a result thereof. In the absence of the Defendants' violation of 18 U.S.C. §§ 1962(c) and (d), these

costs and expenses would have been substantially reduced or eliminated altogether.

12.     Under the provisions of 18 U.S.C. § 1964(c), Plaintiffs are entitled to bring this action and to recover herein treble damages, the costs of bringing this suit, and reasonable attorneys' fees.

## B.     VIOLATION OF THE FEDERAL RACKETEER-INFLUENCED AND CORRUPT ORGANIZATIONS ACT — 18 U.S.C. §§ 1962(A) AND (D)

13.     This claim for relief is asserted against each of the Defendants, and arises under 18 U.S.C. § 1962(a) and (d) of RICO, which provide:

(a)     It shall be unlawful for any person who has received any income derived, directly- or indirectly, from a pattern of racketeering activity... to use or invest, directed, or indirectly, any part of such income, or the proceeds of such income, in acquisition of and, interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

(d)     It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a). . . of this section.

14.     At all relevant times, each of the Defendants was a "person" within the meaning of 18 U.S.C. § 1961 (3), as each of the Defendants was "capable of holding a legal or beneficial interest in property."

15.     At all relevant times Defendants have constituted an enterprise within the meaning of 18 U.S.C. § 1961(4). The Krishna Enterprise and its activities have an effect on interstate commerce in that the enterprise is engaged in the business of soliciting funds and selling Krishna literature, and promoting the attendance of children in their gurukulas, throughout the United States and, in fact, all over the world.

PLAINTIFFS' ORIGINAL COMPLAINT - Page 31

fj06060010.wpd

16.     Defendants have engaged in a pattern of racketeering activity which dates from 1971 through the present and threatens to continue in the future.  The Defendants' multiple predicate acts of racketeering, which generated income for the Defendants, are set forth above and are more particularly described therein.

17.     Defendants have used or invested their illicit proceeds, generated through the pattern of racketeering activity, directly or indirectly in the acquisition of an interest in, or the establishment or operation of, each enterprise in violation of 18 U.S.C. § 1962(a).  Defendants' use and investment of these illicit proceeds in each enterprise is for the specific purpose and has the effect of suppressing and concealing information regarding the incidents of child abuse at the gurukulas.

18.     Each defendant also conspired to violate 18 U.S.C. § 1962(a), in violation of 18 U.S.C. § 1962(d).

19.     Plaintiffs have been injured in their property by reason of Defendants' violations of 18 U.S.C. § 1962(a) and (d) in that Plaintiffs have been required to incur significant costs and expenses attributable to gurukula abuse and the treatments and counseling they have been forced to incur as a result thereof.  Under the provisions of 18 U.S.C. § 1964(c), Plaintiffs are entitled to bring this action and to recover herein treble damages, the costs of bringing this suit and reasonable attorneys' fees.

VIII.

## DAMAGES OF PLAINTIFFS

Damages include but are not limited to the following:

1.     As a result of the incidents of abuse described above, Plaintiffs have suffered, and

PLAINTIFFS' ORIGINAL COMPLAINT - Page 32

will continue to suffer, extreme emotional trauma, pain and suffering, and chronic post-traumatic stress disorder.

2.      Plaintiffs have suffered Medical and Psychotherapeutic expense, a need for therapeutic service, diminished earning capacity and lost earnings, social stigmatization, reduced educational attainments, and substantial general damages.

3.      Plaintiffs have experienced both physical and psychological pain and suffering and mental anguish in the past and in all reasonable probability will sustain physical and psychological pain and suffering in the future as a result of their injuries.

4.      Many Plaintiffs have incurred medical expenses in the past and in all reasonable probability will continue to incur medical expenses as a result of the incidents described herein.

5.      A significantly large proportion of Plaintiff ISKCON children have become alcoholics, drug users, unwed mothers, and suicides.  They suffer from a profound sense of guilt, helplessness, and loss of self-esteem.  They all suffer from post-traumatic stress syndrome as a result of their childhood experience.

6.      Plaintiffs collectively seek $200,000,000 in restitution for their actual damages.

7.      Plaintiffs seek punitive damages in the collective amount of $200,000,000, in order to punish and deter the outrageous conduct taken in heedless and reckless disregard for the safety of Plaintiffs and, as a result of Defendants' conscious indifference to the rights, welfare and safety of Plaintiffs in violation of the laws of the State of Texas, other states and the United States.

8.      Plaintiffs seek triple damages and attorney fees as provided by the RICO Statute.

PLAINTIFFS' ORIGINAL COMPLAINT - Page 33

IX.

## REQUEST FOR INJUNCTION AGAINST FURTHER SEXUAL, EMOTIONAL OR PHYSICAL ABUSE OF MINOR CHILDREN

Plaintiffs believe and therefore allege that the pattern and practice of physical, emotional, and sexual abuse to minor children currently enrolled in or residing at the Defendants' gurukulas, schools, temples, and child care facilities, is ongoing and continues to this day. Plaintiffs therefore ask this Court to issue a temporary injunction prohibiting Defendants from engaging in any further sexual, emotional, or physical abuse of the minor children of ISKCON followers currently enrolled in or residing at Defendants' gurukulas, schools, temples, and child care facilities, and, upon final trial of this matter, to issue a permanent injunction against Defendants from engaging in or allowing any such abuse of said minor children.

X.

## REQUEST FOR ORDER PROHIBITING DESTRUCTION OR SPOLIATION OF EVIDENCE

Plaintiffs request this Court to immediately issue an ORDER instructing the Defendants not to destroy, discard or spoil any documents or records, whether written, recorded, or stored electronically, that may be or may have become relevant to any issue in this suit.

XI.

## STATEMENTS TO THE COURT

1.    Plaintiffs plead delayed discovery of their claims against Defendants despite the exercise of reasonable diligence on their part, thus tolling the statute of limitations.

2.    Plaintiffs plead delayed discovery of the harm caused by physical, emotional, mental and sexual abuse and exploitations by the gurukula teachers and supervisors and the

PLAINTIFFS' ORIGINAL COMPLAINT - Page 34

fj06060010 wpd

delay in treatment despite the exercise of reasonable diligence on their part, thus tolling the statute of limitations.

3.      Plaintiffs plead fraud and fraudulent concealment of this fraud on the part of Defendants, thus suspending the running of limitations as to all claims.

4.      Plaintiffs plead fraudulent concealment of facts under Defendants' control giving rise to this cause of action against all Defendants, thus suspending the running of limitations.

5.      Plaintiffs plead breach of fiduciary duty, including the duty to disclose, against all Defendants, thus suspending the running of limitations against all Defendants.

6.      Plaintiffs plead a concert of action, a conspiracy to conceal negligence, to commit fraud and to fraudulently conceal the acts and the existence of the fraud and conspiracy, thus suspending the running of limitations against all Defendants.

7.      Plaintiffs allege that the actions of the Defendants have caused them to suffer an emotionally unsound mind as to the Defendants, thus suspending the running of limitations, pursuant to Section 16.001 of the Texas Civil Practice and Remedies Code.

8.      Plaintiffs allege that the actions of all Defendants, because of their conduct, statements and promises, preclude them from claiming a bar by limitations to any of Plaintiffs' claims.   Plaintiffs thus plead the doctrine of equitable estoppel.

XII.

## **JURY DEMAND**

Plaintiff hereby requests and demands a trial by jury.

PLAINTIFFS' ORIGINAL COMPLAINT - Page 35

fj06060010 wpd

XIII.

## CLAIM FOR PREJUDGMENT AND POST-JUDGMENT INTEREST

Plaintiffs herein claim prejudgment and post-judgment interest in accordance with Article 5069-1.05 of V.A.T.S. and any other applicable law.

For these reasons, Plaintiffs pray that Defendants be served and cited to appear and answer herein, that a temporary injunction issue against any physical, sexual or emotional abuse of minors under their control, that an ORDER be immediately issued against destruction or spoliation of evidence herein, and upon final hearing of this cause, a permanent injunction against further abuse be issued, and that Plaintiffs have judgment against Defendants, jointly and severally, for damages described herein, for cost of suit, interest as allowable by law and for such other relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

LAW OFFICES OF WINDLE TURLEY, P.C.

Windle Turley
State Bar No. 20304000

Patrick C. Patterson
State Bar No. 15603560

6440 North Central Expressway
1000 University Tower
Dallas, Texas  75206
Telephone No. 214/691-4025
Telecopier No. 214/361-5802
Email: win@wturley.com

ATTORNEYS FOR PLAINTIFFS

PLAINTIFFS' ORIGINAL COMPLAINT - Page 37

fj06060010 wpd